AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )        Case No.  1:20-MJ-00065
803 10TH AVENUE )
MIDDLETOWN, OH 45044 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 841(b)(1)(A), 846 | Possession with Intent to Distribute; Conspiracy to Distribute |

The application is based on these facts:

See the Search Warrant Affidavit of SA Matthew Wenker.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

MATTHEW F. WENKER, FBI SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **Jan 27, 2020**

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman
*Printed name and title*

**ATTACHMENT A**

Search Warrant for: 803 10th Avenue, Middletown, Ohio 45044

The target building is a single level single family dwelling located on the north side of 10th Ave near the intersection of Lincoln St. The location has gray siding and roof with black accents to include shutters and porch railing. The number 803 in black is attached to the front of the residence to the left of the front door which opens to the right. The residence also has a side door on the west side of the residence that faces the side yard and is commonly used to acces the back yard.



Q6521031000004  08/08/2018

**ATTACHMENT B**

<u>THE ITEMS TO BE SEIZED</u>:

The items to be seized are evidence of violations of Title 21, United States Code, Sections 846 and 841 (a)(1), specifically:

  a.  Any and all controlled substances;

  b.  Cash derived from the sale of controlled substances;

  c.  Narcotics or money ledgers, customer lists of narcotics distribution, narcotic supplier lists, correspondence, notations, logs, receipts, journals, books, records and other documents (including computer disks) noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

  d.  Books, records, receipts, computer storage media, electronic information storage devices, bank statements and records, wire transfer records, money drafts, letters of credit, money order and cashier's check receipts, passbooks, bank checks, accounting of expenditures made and payments received, safe deposit box keys and records, money wrappers, rubber bands, money containers, safes, financial records, and notes showing payments, receipt, concealment, transfer, or movement of assets generated from the sale of narcotics;

e.  Cellular telephones, beepers, personal telephone and address books, listings, letters, cables, telegrams, telephone bills, including cellular telephone and beeper bills, fax messages, fax logs, telephone message records, telephone electronic storage devices, personal notes, photographs, calendars, diaries and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking and money laundering activities;

f.  Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, money orders, and certificates of deposit; money counting machines; money wrappers, boxes, bags, briefcases, suitcases or containers used to carry currency or controlled substances;

g.  Records, documents and deeds reflecting the purchase or lease of real estate, any vehicles, or other items, obtained with the proceeds of the sales of controlled substances;

h.  Records, items and documents reflecting travel for the purpose of participating in narcotics trafficking, including passports, airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

i.  Photographs and electronic images, such as video recordings and tape recordings which document the association with other co-conspirators;

j.  Firearms, ammunition, and firearm magazines.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

### AFFIDAVIT IN SUPPORT OF
### APPLICATIONS FOR SEARCH WARRANTS

I, Matthew F. Wenker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since July of 2011. I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include unlawful possession and possession with the intent to distribute of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. My FBI investigative experience is derived from working on the: Mexican Border in Sierra Vista, Arizona, the Navajo Nation Native American Reservation in Gallup, New Mexico, San Juan, Puerto Rico, and Cincinnati, Ohio.  Before being employed as a SA with the FBI, I was a Special Operations U.S. Army Ranger with four Combat Deployments to Afghanistan and Iraq. My formal education consists of a Bachelors of Accounting and a Masters of Business Administration (MBA).

2.      I am currently assigned to the Cincinnati HQ Office of the FBI. I received specialized training from the FBI, including the 6-month Basic Special Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the

United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

      3.     I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Your affiant has also participated in the execution of federal search warrants and federal arrest warrants in relation to these investigations. Additionally, your affiant has participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. Your affiant has also been involved with the administrative duties and monitoring responsibilities of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. Your affiant is familiar with their methods of concealing the whereabouts of their illegal drugs, the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations as well as the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations; as well as the methods they use to prevent others unfamiliar with their criminal conduct from observing things indicative of drug trafficking. Your affiant is also familiar with the paranoia surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

      4.     During the course of my law enforcement career I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in illicit drug trafficking investigations, violent crimes

investigations, and gangs and criminal enterprise investigations, ranging from street level dealers to major drug suppliers. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution and conviction, and have involved: the use of confidential informants; the analysis of pen registers, trap and trace, and toll records; physical surveillances; electronic surveillances to include the use of pole cameras and vehicle cameras; and the execution of search warrants.

5.     Through my training and experience I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard landline telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## THE RELEVANT FACTS

7.     In January of 2019, FBI Cincinnati, Middletown Police Department (MPD) Special Operations Unit (SOU), Butler County Undercover Regional Narcotics (BURN) unit, and ATF Cincinnati initiated a multi-agency joint investigation into the ALL STATE Violent Criminal Organization (VCO) based in Middletown, Ohio. Multiple sources of information have

provided the ALL STATE VCO is engaged in actively putting contract "hits" on individuals who, for various reasons, the ALL STATE VCO wants killed or sent a message. Source information is that ALL STATE VCO will put a contract out with a financial dollar amount for someone to successfully conduct the "hit." To-date there have been at least four such contract killings that sources of information say were conducted at the direction of the ALL STATE VCO. Those murders are in addition to source information as to multiple attempted killings as well as the shootings of vehicles and residences.

8.      Multiple sources of information provided the ALL STATE VCO's primary source of revenue is the storage, production, distribution, and transportation of Heroin Fentanyl mixture. Heroin Fentanyl mixture is a highly addictive and dangerous opioid narcotic, use of which often leads to a fatal overdose death. Per source information, the ALL STATE VCO has been selling Heroin Fentanyl mixture for several years throughout Middletown, Ohio.

9.      The ALL STATE VCO investigation throughout 2019 resulted in a federal conspiracy indictment of 400 grams or more of fentanyl mixture of 13 members of the ALL STATE VCO, numerous federal gun charges, and over a dozen individuals on state criminal charges related to their involvement with the organization.

10.      Through ALL STATE VCO post-arrest interviews, confidential informant debriefings, and sources of information, investigators became aware of a major Heroin Fentanyl drug trafficking cell led by Frederick HILL that is partnered with the ALL STATE VCO. Frederick HILL is a direct family cousin of ALL STATE VCO leader Marqui CONLEY aka KEYMAN, lives several blocks away from Marqui CONLEY's residence, and is alleged to be a source of supply of narcotics for ALL STATE VCO as described in the affidavit.  Frederick HILL works closely with his partner Robert RAMOS aka SNOOTER.

4

11.     Frederick HILL is currently a fugitive with an active arrest warrant out of Texas related to drug trafficking.   Frederick HILL's criminal history includes felony arrests for: Aggravated Robbery and Carrying Concealed Weapon in 2000, Carrying Concealed Weapon, Weapons Under Disability, Assault on Police Officer, and Possession of Cocaine in 2001, Carrying Concealed Weapon, Weapons Under Disability, Possession of Marijuana, and Felonious Assault in 2004, Failure To Comply with the Order of Police, Felonious Assault, and Having Weapons While Under Disability in 2005, Federal Possession with Intent to Distribute of over 500 grams of Cocaine HCL (served a 84 month federal prison sentence) in 2011, Having Weapons While Under Disability and Carrying Concealed Weapons on two separate occasions in 2019.   Frederick HILL is currently on a State of Ohio Bond related to the second 2019 felony arrest for Having Weapons While Under Disability and Carry Concealed Weapons felony charges.   Frederick HILL is also currently serving out a 60 month Federal Supervised Release Program.

12.     In July of 2001, Frederick HILL was convicted of Assault on a Police Officer, a fourth-degree felony, in Butler County, Ohio, case number CR2001040544.   Frederick HILL was sentenced to 12 months incarceration in the Ohio Department of Corrections. Based on that felony conviction, Frederick HILL is prohibited by Federal and state of Ohio law from possessing a firearm.

13.     The information investigators have received about Frederick HILL is that he is a convicted felon and prohibited possessor of firearms, but continues to regularly carry firearms to protect his drug trafficking endeavors, is violent and known to threaten people's lives and willing to place "hits" on individuals.   Frederick HILL has a direct Mexican drug cartel source of supply that he met in federal prison while serving a previous federal drug related sentence.   The

5

Mexican drug cartel connection is regularly sending Frederick HILL multi-kilogram quantities of Heroin Fentanyl mixture. Frederick HILL is alleged to currently be the primary supplier of Heroin Fentanyl throughout Middletown, Ohio and the surrounding areas and is operating his drug trafficking operation from his two residences: 803 10th Avenue, Middletown, Ohio 45044 (**TARGET RESIDENCE 1**), and 1017 Garden Avenue, Middletown, Ohio 45044 (**TARGET RESIDENCE 2**). The following events demonstrate Frederick HILL's drug trafficking activities and utilization of **TARGET RESIDENCE 1 and 2**:

14. On or about May 7, 2019, DEA New Jersey conducted an interview of an individual with ties to Mexico, a Cooperating Defendant (CD-1) who was arrested while attempting to deliver five (5) kilograms of Heroin Fentanyl mixture to a customer in New Jersey. CD-1 provided that he/she was involved with transporting narcotics and bulk cash for a Mexico based Drug Trafficking Organization (DTO), and that one of their main customers was Frederick HILL in Middletown, Ohio. CD-1 described overseeing numerous shipments of three (3) to four (4) kilogram quantities of Heroin Fentanyl mixture concealed within semi-truck loads coming from California and Arizona which were delivered to Frederick HILL. On one specific occasion, CD-1 described personally delivering three kilograms of Heroin Fentanyl mixture to Frederick HILL on April 6, 2019 to **TARGET RESIDENCE 2**. Furthermore, CD-1 described observing Frederick HILL conceal narcotics in the laundry room of **TARGET RESIDENCE 2**. Toll analysis of Frederick HILL's known telephone number (513-420-6039) shows him in communication with multiple international +52 Mexico telephone numbers which appeared to corroborate the information provided by CD-1.

15. On or about July 18, 2019, a joint multi-agency law enforcement undercover operation resulted in the arrest of two individuals attempting to deliver a kilogram of Heroin

Fentanyl mixture to an undercover law enforcement officer for $44,000 cash. Follow-on search warrants resulted in the seizure of additional Heroin Fentanyl mixture, multiple firearms, and several arrests. A Cooperating Defendant (CD-2) from the event provided that they had met with Frederick HILL multiple times on July 18, 2019 to attempt secure large quantities of Heroin Fentanyl mixture to piecemeal together the kilogram for the sale. Frederick HILL allegedly said he would not provide the Heroin Fentanyl because the details of the drug transaction did not sit right with him. Surveillance of the subjects on July 18, 2019 confirmed the meetings with Frederick HILL.

16.     On or about August 23, 2019, during the post-arrest interview of an ALL STATE VCO member and drug trafficker, the Cooperating Defendant (CD-3) provided that Frederick HILL has the best quality Heroin Fentanyl mixture currently for sale in Middletown, Ohio.

17.     On or about August 26, 2019, a search warrant was executed at 1905 Sherman Avenue, Middletown, Ohio related to ALL STATE VCO members selling Heroin Fentanyl mixture from the residence. As a result of the search warrant, approximately 135 grams of Heroin Fentanyl mixture, 118 grams of methamphetamine, 61 grams of cocaine, and six firearms were seized. The search warrant resulted in a separate standalone ATF federal conspiracy indictment on the three main individuals that were located in the residence. A Cooperating Defendant (CD-4) from the event provided the narcotics located inside of the residence came from Frederick HILL. CD-4 also stated that their group had been receiving the narcotics from Frederick HILL for some time, and CD-4 had personally observed approximately ten (10) kilograms of narcotics on Frederick HILL's kitchen table in **TARGET RESIDENCE 1**. CD-4 also advised that Frederick HILL has a direct drug connection with a Mexican Drug Cartel that Frederick HILL met while previously incarcerated in federal prison for a drug conviction. CD-4

7

further stated that Frederick HILL was supplying large quantities of Heroin Fentanyl mixture to Donny BROWN and William "AJ" WOFFORD.  Another one of the defendants from the ATF conspiracy indictment would not state where the narcotics came during the post-arrest interview, but he recently told a separate Cooperating Defendant (CD-5) located in Butler County Jail with the defendant, that they had acquired the narcotics located in 1905 Sherman Avenue residence from Frederick HILL.

18.    On or about September 25, 2019, Donny BROWN was arrested with approximately 325 grams of Heroin Fentanyl mixture, drug paraphernalia, and a firearm.  During the post-arrest interview of the Cooperating Defendant (CD-6), CD-6 provided that the narcotics came from Frederick HILL and provided Frederick HILL's known telephone number (513-420-6039).  Donny BROWN was able to bond out of jail after several days.

19.    On or about October 2, 2019, law enforcement received information that Donny BROWN and William WOFFORD were located together in a Middletown, Ohio residence mixing a large batch of Heroin Fentanyl mixture and preparing it for distribution and sale.  Law enforcement set up surveillance on the residence, and shortly after Donny BROWN and William WOFFORD were observed sprinting from the residence.  A business security surveillance camera captured Donny BROWN throwing a plastic bag containing approximately 138 grams of Heroin Fentanyl mixture under a parked car and William WOFFORD attempted to hide a key to one of Donny BROWN's vehicles under a guard rail.  Donny BROWN and William WOFFORD were both arrested shortly after running from the residence.  The narcotics seized from this event are believed to have been sourced from Frederick HILL.  A search of the residence Donny BROWN and William WOFFORD ran from revealed additional drug paraphernalia.

20.     On or about October 3, 2019, law enforcement executed search warrants at William WOFFORD's residence and storage locker where approximately 627 grams of Fentanyl mixture, approximately $71,082 in bulk cash, and drug paraphernalia was seized.  The bulk cash is believed to be the proceeds of drug trafficking, and the narcotics are also believed to have been sourced from Frederick HILL.

21.     On or about October 3, 2019, law enforcement arrested Louis EUBANKS aka CHICAGO pursuant to a federal arrest warrant for EUBANKS after he left from a residence in Dayton, Ohio.  The federal arrest warrant for EUBANKS was related to his involvement in the August 26, 2019 search warrant of 1905 Sherman Avenue, Middletown, Ohio, described above, where EUBANKS had successfully fled from the residence during execution of the search warrant.  An additional approximately 28 grams of suspected Heroin Fentanyl mixture was found in the Dayton residence where EUBANKS had left from, and CD-4 provided that EUBANKS purchased that batch of narcotics from Frederick HILL.

22.     On or about October 21, 2019, CD-4 advised investigators that Frederick HILL had requested CD-4's crew to conduct a "hit" to kill an individual whom Frederick HILL believed had stolen items out of his yard at **TARGET RESIDENCE 1**.  Frederick HILL offered a payment for successfully conducting the hit of $30,000 cash and one half (1/2) a kilogram of un-cut Heroin Fentanyl mixture.

23.     On or about December 3, 2019, a traffic stop involving known drug trafficker Christopher LEWIS resulted in the seizure of approximately 18 grams of Heroin Fentanyl mixture, and approximately $1,536 cash.  Law Enforcement knew Christopher LEWIS and his drug trafficking crew were selling narcotics out of 3407 Grand Avenue, Middletown, Ohio and set up surveillance on the residence shortly after the traffic stop.  Two separate vehicles were

9

then observed fleeing from the residence. Law enforcement was able to traffic stop one of the vehicles which resulted in the seizure of approximately $110,698 in bulk cash. A subsequent search warrant of the residence resulted in seizures of drug paraphernalia, a money counting machine, firearms parts, and an additional $966. The post-arrest interview of a Cooperating Defendant (CD-7) from the event revealed the vehicle that got away contained a large amount of narcotics and multiple firearms. In addition, another Cooperating Defendant (CD-8) from the event advised law enforcement that the vehicle that got away contained narcotics and firearms. A Middletown Police Department Cooperating Defendant (CD-9), advised law enforcement that Frederick HILL has told people that he told Christopher LEWIS's crew to get the money out of the house on Grand Avenue, and that Frederick HILL's money was messed up because of the bust. Based upon the large size of the money seizure, and statements from Cooperating Defendants, your affiant believes the narcotics being sold by this organization were sourced from Frederick HILL.

24. On or about December 12, 2019, known Middletown Drug Trafficker, Reginald "Reggie" THORNTON was arrested pursuant to a traffic stop in possession of approximately 5.7 grams of suspected Heroin Fentanyl mixture. After the arrest of THORNTON, a cooperating defendant (CD-10) provided that Reginald THORNTON had originally purchased 10 grams of Heroin Fentanyl mixture directly from Frederick HILL at **TARGET RESIDENCE 2**.

25. On or about December 15, 2019, an inmate located in the Butler County Jail that was arrested as part of the ALL STATE VCO conspiracy indictment, placed a recorded jail call to Frederick HILL on his known telephone (513-420-6039). Frederick HILL directed the inmate to send a letter to him at **TARGET RESIDENCE 2** and stated "I get everything that come

there." During the call, Frederick HILL also talked about William WOFFORD and Donny BROWN who are described in the events above.

26.     On or about December 16, 2019, Cooperating Defendant (CD-11) provided that Frederick HILL is selling large quantities of Heroin Fentanyl mixture throughout Middletown and Hamilton, Ohio. CD-11 provided that he/she had previously purchased Heroin Fentanyl mixture directly from Frederick HILL numerous times, and provided specific details about Frederick HILL and his operations such as visiting Frederick HILL at **TARGET RESIDENCE 1** to purchase Heroin Fentanyl mixture. CD-11 also described Robert RAMOS aka SNOOTER to be selling large quantities of Heroin Fentanyl mixture. A search of CD-11's telephone revealed the contact "Fred" with the known telephone number of Frederick HILL (513-420-6039).

27.     On or about January 6, 2020, Natasha WALTON was arrested pursuant to a traffic stop with approximately 100 grams of suspected Heroin Fentanyl mixture and approximately $2,334 in bulk cash. A post-arrest interview of the Cooperating Defendant (CD-12) revealed the narcotics were acquired from Christopher LEWIS. Law enforcement believes that the narcotics from Christopher LEWIS were sourced from Frederick HILL, which is described above. CD-12 further described having previously personally purchased Heroin Fentanyl mixture directly from Frederick HILL multiple times, and a search of CD-12's telephone revealed the known telephone number of Frederick HILL (513-420-6039) saved under the contact name "Fred". Text message conversations between CD-12 with Frederick HILL showed Frederick HILL directing CD-12 to "meet me in the alley behind my spot on 10th" (**TARGET RESIDENCE 1**).

11

28.     On or about January 16, 2020, a Warren County Drug Task Force (WCDTF) Detective advised that they have a Cooperating Defendant (CD-13) who recently provided that Frederick HILL is supplying Robert RAMOS aka SNOOTER and they are a major supplier of Heroin Fentanyl mixture throughout Middletown, Ohio.

29.     From October 29 through December 7 of 2019, Middletown Police Department had a state court authorized Telephone GPS ping location on Frederick HILL's known telephone number (513-420-6039) and a court authorized GPS tracker on one of his vehicles.  The GPS location data showed Frederick HILL residing overnight at **TARGET RESIDENCE 1**, while frequently visiting **TARGET RESIDENCE 2**.

30.     From October 2019 through present, routine physical and video surveillance of Frederick HILL has also shown Frederick HILL residing overnight at **TARGET RESIDENCE 1**, while frequently visiting **TARGET RESIDENCE 2**.  Frederick HILL resides with his paramour, Kisha ALDRIDGE, at **TARGET RESIDENCE 1**.  Frederick HILL's mother, Dana HILL, is the occupant of **TARGET RESIDENCE 2**.  The surveillance also showed both Kisha ALDRIDGE and Dana HILL operating and utilizing Frederick HILL's multiple vehicles.

31.     On January 17, 2020, investigators received information that Frederick HILL and Kisha ALDRIDGE are both sending international financial payments to individuals in Mexico. Based upon my training and investigation, these financial payments are believed to be related to drug trafficking.

32.     On January 23, 2020, investigators reviewed recent electronic surveillance footage of **TARGET RESIDENCE 1** and **2** which confirmed that Frederick HILL was still regularly in and out of, and living at, **TARGET RESIDENCE 1**.  Frederick HILL has five known vehicles and will drive the different vehicles at different times.  Frederick HILL was

observed meeting with unknown individuals in front of **TARGET RESIDENCE 1**, and often times will go sit in ones of his vehicles and conduct what appears to be lengthy telephone conversations by himself.  On or about January 6, 2020, at around 4:30 p.m., an incident occurred which appeared to be several Hispanic males carrying black garbage bags of unknown content into **TARGET RESIDENCE 1**.  Frederick HILL visited **TARGET RESIDENCE 2** on almost a daily basis in different vehicles, usually going in and out of the residence for brief periods of time in a manner that would be consistent with retrieving items from the residence. Based upon my training, experience, and the investigation: your affiant believes that Frederick HILL continues to, and will continue to, utilize **TARGET RESIDENCE 1** and **2** for his drug trafficking activities.

32.     The Ohio Driver's license of Kisha ALDRIDGE shows her registered living at **TARGET RESIDENCE 1**, while Frederick HILL and Dana HILL are registered living at **TARGET RESIDENCE 2**.  The information provided throughout this affidavit appears to show Kisha ALDRIDGE and Dana HILL as knowing, willing, and benefiting participants in Frederick HILL's drug trafficking activities.

33.     Frederick HILL has been observed utilizing multiple residences, buildings and vehicles, and routinely dresses in what appears to be expensive clothing and jewelry. Throughout the investigation, investigators have not been able to identify any known form of legitimate employment for Frederick HILL.  Based upon my training and experience, Frederick HILL has significant unexplained wealth, and his possessions appear to be purchased with the proceeds of drug trafficking.

34.     Through my training and experience, information and intelligence gathered, combined with the physical and electronic surveillance during this investigation: Frederick HILL

13

has engaged in a pattern of utilizing **TARGET RESIDENCE 1** and **TARGET RESIDENCE 2** to hide and conceal drug proceeds, personal assets purchased with drug proceeds, narcotics, firearms, and evidence of narcotics trafficking.  I further know, based on my training and experience, that large-scale drug traffickers frequently use residences for the purpose of storing narcotics, records of drug transactions, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, and that such residences often contain evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in narcotics trafficking activities.  I believe these items are likely to be found during the requested search.

## Summary

35.     Based on the aforementioned facts set forth in the affidavit, your affiant believes that there is probable cause to believe that Frederick HILL has violated Title 21 Sections 841 (1) (a) and (b), and 846.  Frederick HILL is involved with the distribution of Heroin Fentanyl mixture and will continue to use the **TARGET RESIDENCE 1** and **TARGET RESIDENCE 2** to store and conceal Heroin Fentanyl mixture, scales, packaging material, processing paraphernalia, vehicles, cell phones, jewelry, computers, monies, ledgers, and other instrumentalities of drug trafficking.  By searching the aforementioned locations your affiant believes FBI and other federal and state law enforcement partners will find further proof of Frederick HILL's illegal activities and may seize additional contraband and/or fruits of illegal activities.

36.     Frederick HILL is a fugitive with an active state of Texas Arrest Warrant.  These search warrants are requested in anticipation of being executed in tandem with a federal Arrest Warrant on Frederick HILL.  Accordingly, he is a person to be arrested as provided in Federal

14

Rule of Criminal Procedure 41.  Your affiant believes that there is probable cause to believe that Frederick HILL is using the **TARGET RESIDENCE 1** and **2** and will continue to use the **TARGET RESIDENCE 1** and **2** to conceal himself as a fugitive from law enforcement.  By searching the aforementioned locations, your affiant believes law enforcement will find Frederick HILL and evidence set forth in Attachment B.

37.     Further, as set forth in this Affidavit, because of the instances of firearms possession, and Frederick HILL's background of violence: there a substantial safety risk, and because I believe that announcement of the law enforcement presence and purpose would be futile, and because I believe there is a high likelihood that evidence will be destroyed by Frederick HILL and associates who reside at or occupy **TARGET RESIDENCE 1** and **2**: I therefore request that the Court find that making forcible entry during the daylight hours and that announcing the presence of law enforcement intending to search are inappropriate and would indeed be dangerous to those searching law enforcement officers (as well as to the civilians within).  Accordingly, I request that the Court authorize that any or all of these requested searches may also occur between the hours of 10 P.M. at night and 6 A.M. ("**NIGHT-TIME**") and without prior announcement of law enforcement presence and intent to search ("**NO KNOCK**").

## REQUEST FOR SEALING

38.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant and the attachments, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

15

39.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the search authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the property owner/user/occupant would seriously jeopardize the ongoing investigation, as such a disclosure would give that person and others an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).

Respectfully submitted,

Matthew F. Wenker
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 27th day of January, 2020.

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

16

**ATTACHMENT A**

Search Warrant for: 803 10th Avenue, Middletown, Ohio 45044

The target building is a single level single family dwelling located on the north side of 10th Ave near the intersection of Lincoln St.  The location has gray siding and roof with black accents to include shutters and porch railing.  The number 803 in black is attached to the front of the residence to the left of the front door which opens to the right. The residence also has a side door on the west side of the residence that faces the side yard and is commonly used to acces the back yard.



**ATTACHMENT B**

THE ITEMS TO BE SEIZED:

      The items to be seized are evidence of violations of Title 21, United States Code, Sections 846 and 841 (a)(1), specifically:

      a.     Any and all controlled substances;

      b.     Cash derived from the sale of controlled substances;

      c.     Narcotics or money ledgers, customer lists of narcotics distribution, narcotic supplier lists, correspondence, notations, logs, receipts, journals, books, records and other documents (including computer disks) noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

      d.     Books, records, receipts, computer storage media, electronic information storage devices, bank statements and records, wire transfer records, money drafts, letters of credit, money order and cashier's check receipts, passbooks, bank checks, accounting of expenditures made and payments received, safe deposit box keys and records, money wrappers, rubber bands, money containers, safes, financial records, and notes showing payments, receipt, concealment, transfer, or movement of assets generated from the sale of narcotics;

e.  Cellular telephones, beepers, personal telephone and address books, listings, letters, cables, telegrams, telephone bills, including cellular telephone and beeper bills, fax messages, fax logs, telephone message records, telephone electronic storage devices, personal notes, photographs, calendars, diaries and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking and money laundering activities;

f.  Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, money orders, and certificates of deposit; money counting machines; money wrappers, boxes, bags, briefcases, suitcases or containers used to carry currency or controlled substances;

g.  Records, documents and deeds reflecting the purchase or lease of real estate, any vehicles, or other items, obtained with the proceeds of the sales of controlled substances;

h.  Records, items and documents reflecting travel for the purpose of participating in narcotics trafficking, including passports, airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

i.  Photographs and electronic images, such as video recordings and tape recordings which document the association with other co-conspirators;

j.  Firearms, ammunition, and firearm magazines.